IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHER DISTRICT OF ILLINOIS
_____ DIVISION

| | |
|---|---|
| ST. PAUL FIRE AND MARINE INSURANCE COMPANY,<br><br>    Plaintiff,<br><br>  v.<br><br>GENZYME CORPORATION, CARRIE MICHAELS f/k/a Carrie Zumbahlen, MICHAEL ASHLEY, and MARADA ZUMBAHLEN f/k/a Marada Ashley,<br><br>    Defendants. | Case No.: |

**COMPLAINT FOR DECLARATORY JUDGMENT**

Now comes St. Paul Fire and Marine Insurance Company ("St. Paul"), by and through counsel, and for its Complaint for Declaratory Judgment, states as follows:

**NATURE OF THE ACTION**

1. This is a declaratory judgment action in which St. Paul seeks a declaration that it owes no duty to defend or indemnify Genzyme Corporation ("Genzyme") in connection with an underlying tort action filed by Carrie Michaels ("Ms. Michaels"), Michael Ashley ("Mr. Ashley"), and Marada Zumbahlen ("Ms. Zumbahlen") captioned *Carrie Michaels et al. v. Genzyme Corporation, et al.*, pending as Case No. 3:23-cv-02021 in the U.S. District Court for the Southern District of Illinois (the "Underlying Lawsuit"). A copy of the Second Amended Complaint filed in the Underlying Lawsuit is attached hereto as **Exhibit "A"**.

**PARTIES**

2. St. Paul is an insurance company incorporated in Connecticut with its principal place of business in Connecticut.

3. Upon information and belief, Genzyme is a Massachusetts corporation with a principal place of business in Massachusetts. Genzyme is alleged, in the Underlying Lawsuit, to be a successor in interest to Genetic Design, Inc. ("Genetic Design"), but, for the purposes of citizenship, the relevant entity is Genzyme.

4. Upon information and belief, Ms. Michaels, Mr. Ashley, and Ms. Zumbahlen are residents and citizens of Effingham, Illinois. Ms. Michaels, Mr. Ashley, and Ms. Zumbahlen are collectively referred to herein when appropriate as the "Underlying Plaintiffs." The Underlying Plaintiffs are named in this action only to bind them by the Court's judgment. St. Paul is not seeking any other relief against them and will drop them from this action if they agree to be bound by the judgment.

## JURISDICTION AND VENUE

5. An actual justiciable controversy exists between the parties pursuant to the U.S. Constitution and 28 U.S.C. § 2201 as to the insurance coverage afforded to Genzyme in connection with the Underlying Lawsuit.

6. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because St. Paul is a citizen of Connecticut, while Genzyme is a citizen of Massachusetts and Ms. Michaels, Mr. Ashley, and Ms. Zumbahlen are citizens of Illinois, and the amount in controversy exceeds the sum or value of $75,000, exclusive of interests and costs.

7. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2)&(3) because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district and all of the defendants are subject to this Court's jurisdiction.

# THE ST. PAUL POLICIES

8. St. Paul issued policies bearing policy number FK03200125, FK03200295, and FK03200391 to Genetic Design, Inc. for the respective policy periods running from May 12, 1989 to May 12, 1990, May 12, 1990 to May 12, 1991, and May 12, 1991 to May 12, 1992 (the "St. Paul Policies"). The St. Paul Policies are attached hereto as **Exhibits "B," "C," and "D"**.

9. Genzyme is alleged, in the Underlying Lawsuit, to be the successor in interest to Genetic Design, and, upon information and belief, Genzyme asserts that it qualifies as an Insured under the terms of the St. Paul Policies.

10. The St. Paul Policies contain "Professional Office Package – Commercial General Liability Protection," Form 41130 Ed. 10-85, which includes, among other things, the following "Professional Services" exclusion:

> **Exclusions – What This Agreement Won't Cover**
>
> \*   \*   \*
>
> **Professional services.** We won't cover injury or damage resulting from the performance of or the failure to perform any professional duties of the profession described in the Coverage Summary or any other professional services. Nor will we cover injury or damage that results from any support activities to the profession such as secretarial or clerical.
>
> \*   \*   \*

*See Exhibits "B," "C," and "D".*

11. The St. Paul Policies contain "Health Care or Cosmetic Services Exclusion Endorsement," Form 43428 Ed. 7-85, which includes, among other things, the following "Health Care Services" exclusion:

> **How Coverage Is Changed**
>
> The following is added to the Exclusion – What This Agreement Won't Cover section. This change excludes coverage.

> **Health care or cosmetic services.** We won't cover injury or damage or medical expenses that result from the performance of or failure to perform health care or cosmetic services.
>
> *Health care services* include:
> - Medical, surgical, dental, x-ray, nursing or other health care services or treatments. And food or beverages given with these services or treatments.
>
> \* \* \*

*See Exhibits "B," "C," and "D".*

12. The St. Paul Policies contain "Professional Liability Protection – Claims-Made," designated as Form 43562 Ed. 1-85, which includes, among other things, the following language:

> This agreement provides protection against professional liability claims which might be brought against you in your professional practice.
>
> **Important note:** This is a claims-made coverage. Please read it carefully, especially the When A Claim Is Covered Section.
>
> \* \* \*
>
> **When A Claim Is Covered**
>
> We'll cover claims that result from the professional service you performed or should have performed after the retroactive date that applies. We must also be notified of the claim while this agreement is in effect.
>
> \* \* \*

*See Exhibits "B," "C," and "D".*

## THE UNDERLYING TORT LAWSUIT

13. On May 5, 2023, the Underlying Plaintiffs sued Genetic Design.

14. On June 26, 2023, Genzyme provided notice to St. Paul of: (a) the Underlying Plaintiff's claim; and (b) the Underlying Lawsuit.

15. Prior to June 26, 2023, neither Genzyme nor any alleged predecessor entity (including, but not limited to, Genetic Design) did not provide notice to St. Paul of: (a) the Underlying Plaintiffs' claim; or (b) the Underlying Lawsuit.

16. Prior to June 26, 2023, the Underlying Plaintiffs did not provide notice to St. Paul of: (a) the Underlying Plaintiffs' claim; or (b) the Underlying Lawsuit.

17. On September 6, 2023, the Underlying Plaintiffs filed their Second Amended Complaint in the Underlying Lawsuit. *See Exhibit "A"*.

18. In the Underlying Lawsuit, the Underlying Plaintiffs allege that, in 1989, Marada Zumbahlen and Michael Ashley paid for a private DNA paternity test whereby the Underlying Plaintiffs' blood was drawn at Physicians Clinical Laboratories, Inc. and a paternity evaluation was performed by Genetic Design to determine whether Mr. Ashley was the biological father of Ms. Michaels. *See Exhibit "A" at ¶ 10*.

19. Upon information and belief, Genetic Design and Physicians Clinical Laboratories, Inc. are and were separate legal entities.

20. In the Underlying Lawsuit, the Underlying Plaintiffs allege that Genetic Design collected blood samples for testing in Illinois. *See Exhibit "A" at ¶ 11*.

21. In the Underlying Lawsuits, the Underlying Plaintiffs allege that the test performed by Genetic Design showed the probability of paternity between Ms. Michaels and Mr. Ashley to be 0%. *See Exhibit "A" at ¶ 12*. The Underlying Plaintiffs further allege that the results of the test performed by Genetic Design were erroneous. *See Exhibit "A" at ¶ 25*.

22. In the Underlying Lawsuit, the Underlying Plaintiffs allege that the Underlying Plaintiffs relied on the test performed by Genetic Design. The Underlying Plaintiffs alleged that

Ms. Zumbahlen and Mr. Ashley divorced and, in reliance on Genetic Design's test results, Ms. Zumbahlen married James Zumbahlen. *See Exhibit "A" at ¶¶ 13-15*.

23. In the Underlying Lawsuit, the Underlying Plaintiffs allege that Ms. Michaels was physically, emotionally, and sexually abused and assaulted by James Zumbahlen. *See Exhibit "A" at ¶ 18*.

24. In the Underlying Lawsuit, the Underlying Plaintiffs allege that in 2021, Ms. Michaels learned from other genetic tests that she was, in fact, the biological daughter of Mr. Ashley. *See Exhibit "A" at ¶¶ 20-24*.

25. In the Underlying Lawsuit, the Underlying Plaintiffs allege that Genetic Design owed a duty to the Underlying Plaintiffs to conduct accurate DNA testing for the purposes of determining the paternity of Ms. Michaels and that Genetic Design breached its duties to the Underlying Plaintiffs when it performed and issued its erroneous DNA report. *See Exhibit "A" at ¶¶ 26-27*.

26. In the Underlying Lawsuit, the Underlying Plaintiffs allege that, as a result of Genetic Design's errors and/or erroneous DNA testing and result, the Underlying Plaintiffs have suffered damages as follows: (a) for over 30 years, Ms. Michaels and Mr. Ashley were denied a biological parent and child relationship and family with each other; (b) Ms. Zumbahlen's relationship with the biological father of Ms. Michaels, Mr. Ashley, was terminated due to the belief that he was not the father of the minor child; (c) Ms. Michaels had to endure severe physical, mental, and sexual abuse and assault at the hands of James Zumbahlen and as a result severe mental anguish and guilt suffered by Mr. Ashley in feeling that he should have been there for his biological daughter and was prevented; (d) were denied the emotional support and help needed while raising the child and that a daughter would need from her father while growing up; (e) suffering great

mental anguish and guilt since learning that Mr. Ashley is, in fact, the biological father of Ms. Michaels. *See Exhibit "A" at ¶ 28*.

27. In the Underlying Lawsuit, the Underlying Plaintiffs allege the following causes of action against Genzyme: (1) negligence (*res ipsa loquitur*); (2) negligence; and (3) violation of the Illinois Consumer Fraud Act. *See Exhibit "A" at ¶¶ 29-38*.

### COUNT I – DECLARATORY RELIEF (PROFESSIONAL LIABILITY)

28. St. Paul repeats and realleges the allegations of the preceding paragraphs as if set forth here in their entirety.

29. St. Paul was <u>not</u> notified of claim alleged in the Underlying Lawsuit while any of the St. Paul Policies were in effect.

30. Accordingly, St. Paul owes no duty to defend or indemnify Genzyme in connection with the Underlying Lawsuit under the terms of the Professional Liability coverage in the St. Paul Policies.

### COUNT II – DECLARATORY RELIEF (GENERAL LIABILITY)

31. St. Paul repeats and realleges the allegations of the preceding paragraphs as if set forth here in their entirety.

32. The facts alleged in the Underlying Lawsuit do not allege that Genzyme caused covered "bodily injury," which is defined in the St. Paul Policies as "… any harm to the health of other persons, including physical harm, sickness, disease and mental anguish, injury or illness." "Bodily injury" as defined in the St. Paul Policies also "… includes care, loss of services or death that results from the harm." *See Exhibits "B," "C," and "D"*.

33. The facts alleged in the Underlying Lawsuit do not allege "bodily injury" caused by an "event," which is defined in the St. Paul Policies as "… an accident, including continuous

or repeated exposure to substantially the same general harmful conditions." *See Exhibits "B," "C," and "D"*.

34. Pleading in the alternative to the two paragraphs above, upon information and belief, to the extent that the facts alleged in the Underlying Lawsuit allege "bodily injury" caused by an "event," as those terms are defined in the St. Paul Policies, some or all of the alleged "bodily injury" did not happen while the St. Paul Policies were in effect.

35. The "Professional Services" exclusion bars coverage for the allegations of the Underlying Lawsuit.

36. The "Health Care Services" exclusion bars coverage for the allegations of the Underlying Lawsuit.

37. Accordingly, St. Paul owes no duty to defend or indemnify Genzyme in connection with the Underlying Lawsuit under the terms of the General Liability coverage in the St. Paul Policies.

## COUNT III – DECLARATORY RELIEF (INSURED STATUS)

38. St. Paul repeats and realleges the allegations of the preceding paragraphs as if set forth here in their entirety.

39. Pleading in the alternative to the allegations above, to the extent Genzyme is not insured under the St. Paul Policies, there is no coverage for Genzyme, and St. Paul owes no duty to defend or indemnify Genzyme.

## PRAYER FOR RELIEF

Wherefore, St. Paul respectfully requests that the Court enter judgment as follows:

a. Finding and declaring that St. Paul owes no coverage for Genzyme in connection with the Underlying Lawsuit, and therefore St. Paul owes no duty to defend or indemnify Genzyme in connection with the Underlying Lawsuit; and

    b.  Awarding such other and further relief to St. Paul as the Court deems just and proper.

Dated: November 21, 2023

                                  Respectfully submitted,

                                  **ST. PAUL FIRE AND MAR. INS. CO.**

                                  By:  /s/ Michael H. Passman
                                  One of its attorneys

                                  Michael H. Passman – IL ARDC # 6297381
                                  **USERY & ASSOCIATES**
                                  215 Shuman Blvd | Third Floor West
                                  Naperville, IL 60563
                                  Direct: 630.961.8087
                                  Main: 917.778.6680

                                  Fax: 844.571.3789
                                  Email: mpassma2@travelers.com

                                  <u>Please address all correspondence sent by mail to:</u>

                                  P.O. Box 2996
                                  Hartford, CT 06104-2996